WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Stephen Thompson, Jr.

Plaintiff,

v.

Carolyn W. Colvin,

Defendant.

No. CV-14-2375-TUC-DTF

**ORDER**

Plaintiff Stephen Thompson, Jr., brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Plaintiff filed his opening brief. (Doc. 18.) In response, the Commissioner moved to remand the case to the ALJ. (Doc. 28.) Plaintiff opposes a remand for further proceedings because he contends he is entitled to an immediate award of benefits. (Doc. 29.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record submitted to the Court, this matter is remanded for further proceedings.

**PROCEDURAL HISTORY**

Thompson filed an application for Disability Insurance Benefits (DIB) on June 16, 2010, and Supplemental Security Income (SSI) on July 16, 2010. (Administrative Record (AR) 354, 361.) He alleged disability from October 4, 2009. (AR 354, 361.) Thompson's application was denied upon initial review (AR 114-49) and on reconsideration (AR 150-93). A hearing was held on July 17, 2012, at which Thompson and vocational expert John

Kilcher testified. (AR 38-81.) On November 27, 2012, the ALJ held a second hearing. (AR 84.) Thompson testified a second time and vocational expert Kathleen McAlpine testified. (AR 84-113.) Subsequently, the ALJ found that Thompson was not disabled (AR 23-31). The Appeals Council denied Thompson's request to review the ALJ's decision. (AR 1-3.)

**FACTUAL HISTORY**

Thompson was born on October 9, 1958, making him 51 years of age at the time he applied for disability. (AR 354.) Thompson had a long history working as a registered nurse and he taught seminars for a catheter manufacturer. (AR 85, 382.) In early 2008, Thompson began abusing opiates that he obtained at the hospital where he worked (something he also had done during prior periods of his life). (AR 506.) In August 2009, after being confronted at work about his behavior, he attempted suicide. (AR 506, 513.) In early October 2009, Thompson attempted suicide a second time. (AR 513-14.)

The ALJ found Plaintiff had several severe impairments: history of a left rotator cuff tear, improved; diabetes mellitus, type II; diabetic neuropathy, lower extremity, sensory; history of sleep apnea, improved with weight loss; drug overdose induced bilateral sensorineural hearing loss; and polysubstance addiction disorder. (AR 23.) The ALJ concluded that, considering Plaintiff's substance use disorder, he met a listing and was disabled at Step Three. (AR 23.) However, the ALJ concluded that if Thompson stopped the substance use, he could perform other work available in the national economy and was not disabled at Step Five. (AR 27, 30.)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; and (3) the impairment meets or equals the requirements of a listed impairment; or (4) claimant's

RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Thompson alleges the ALJ erred in giving the greatest weight to Dr. Onate, which caused the ALJ to err in determining which of Thompson's impairments were severe at Step Two and in finding that Thompson had a substance addiction disorder that met the listings at Step Three. Thompson also alleges the ALJ erred at Step Five in concluding there were other jobs in the national economy that he could perform.

The Commissioner requests a remand because the ALJ failed to address the medical source opinions of the State Agency doctors (Drs. Estes, Penner and Dodson) and Dr. Karin Ahlstrand (neuropsychologist). Plaintiff asks instead for an immediate award of benefits arguing that he is so entitled based on the credit as true rule. In light of conceded error by Defendant, this case will be remanded. The question is whether Plaintiff is entitled to an award of benefits with no further proceedings.

In an effort to expeditiously answer that question, the Court first evaluates the possible application of the credit as true rule in this case. The Ninth Circuit has held that a district court should credit as true evidence that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *see Garrison v. Colvin*, 759 F.3d 995, 1019-20 (9th Cir. 2014). The Court concludes credit as true is not warranted in this case because there are outstanding issues that must be resolved before a disability decision can be reached.

The medical opinions that the ALJ failed to consider and those that Thompson alleges the ALJ erroneously discounted are not consistent. For example Drs. Estes and Penner (non-examining physicians) concluded Thompson had some moderate limitations

but could perform unskilled work. (AR 129, 168-69.) Dr. Rau (examining physician) found moderate limitations in sustained concentration and persistence but did not opine that Thompson could not work. (AR 1357.) In contrast, Dr. Ahlstrand (examining physician) concluded Thompson could not return to nursing and cognitive impairments would interfere with his work abilities. (AR 607.) And, Dr. Sora (examining physician) and Nurse Practitioner Hess (an "other" treating medical source) both offered the opinion that Thompson could not work due to cognitive and emotional impairments. (AR 1466, 1495, 1638.) It is for the ALJ to resolve such conflicts in medical testimony. *Andrews*, 53 F.3d at 1039.

The Court also finds that this matter needs to be remanded in light of the ALJ's treatment of Thompson's substance abuse. The ALJ conducted a substance abuse disorder analysis without citing any record evidence that Thompson had abused alcohol or drugs since his alleged disability onset date. The ALJ discounted Thompson's credibility and found that his reporting regarding his drug abuse was inconsistent. (AR 24.) While that finding is well-supported as to Thompson's historic abuse of substances, the ALJ cites no evidence of current drug use only evidence of drug cravings.[1] (AR 25.) There is no question that Thompson had an addiction at the time of onset and he was just beginning remission; however, neither the ALJ nor either party cited any evidence of substance abuse after Thompson's October 2009 second suicide attempt. Although the ALJ relies upon Dr. Onate's diagnosis of an opioid dependence (active) in October 2010, the doctor documented without question Thompson's report that he had been "clean" for a year. (AR 1488, 1490.) No other medical source diagnosed Thompson as having an active substance abuse disorder after the onset date.

The ALJ determined Thompson would be disabled at Step Three while using substances but would not be disabled if he stopped the use of substances. There is little

[1] The ALJ stated Thompson engaged in drug-seeking behavior, but the ALJ cited no record evidence for that finding. (AR 25.) Regardless, unsuccessful drug seeking does not equate to drug use.

record evidence to support this distinction. A finding at Step Three for Substance Addiction Disorders requires an initial finding of behavioral or physical changes associated with "the regular use of substances." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.09. The ALJ did not make this finding. In evaluating the paragraph B criteria, the ALJ found marked limitations in social functioning and in concentration, persistence or pace. (AR 24.) In support, the ALJ relied primarily upon family reports from August 2010 and June 2012 (AR 394, 437-442), as well as Dr. Rau's March 2011 exam (AR 1350).[2] Although there is no evidence Thompson was abusing substances in 2010, 2011, or 2012, the ALJ concluded that if Thompson stopped substance abuse he would have only a mild difficulty in social functioning and a moderate difficulty in concentration, persistence or pace. (AR 28.) The ALJ cites no record evidence for this conclusion. (*Id.*) No medical sources offered an opinion distinguishing Thompson's limitations when abusing substances and when not using substances.[3]

The Court determines that the ALJ must reconsider his substance abuse analysis in light of the above identified inconsistencies. This may require the ALJ to obtain additional medical testimony, which Defendant acknowledged (Doc. 28 at 21). Because the ALJ's evaluation regarding Thompson's substance abuse is a central issue in his analysis, further proceedings are required before a final determination can be reached.

One matter related to substance abuse is Thompson's credibility. Thompson did not in his opening brief challenge the ALJ's credibility finding. In his reply brief, however, Thompson argued the ALJ's credibility finding was tainted by his rejection of other evidence. The Court agrees that upon remand the ALJ must reconsider his credibility finding in light of all the evidence and this Order.

---

[2] It is worthy of note that later in his opinion, the ALJ stated that he gave limited weight to the lay witness testimony and the opinion of Dr. Rau. (AR 25.) The ALJ did not reconcile this inconsistency.

[3] If, upon remand, the ALJ determines that Thompson has a cognitive disorder, a major depressive disorder, and/or an anxiety disorder, he will have to reconsider whether Thompson meets any of the related listings at Step Three.

The Court recognizes that this case has been ongoing for 5 years and that Thompson has not contributed to the delay. Review of the record reveals numerous errors in the ALJ's decision, some of which Defendant concedes. However, this is not the rare case where further proceedings would not be useful and the Court can award benefits. *See Treichler v. Comm'r of Social. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). After the ALJ considers all of the medical opinions and the other record evidence it remains to be determined if Thompson has other severe impairments at Step Two; what, if any, listings Thompson meets at Step Three; whether Thompson had an active substance abuse disorder during the relevant time; and his RFC. Therefore, Thompson is not entitled to a remand for the award of benefits based on the current record.

For guidance upon remand, the Court turns to the other issues Thompson raised.

Dr. Ahlstrand and Agency Non-Examining Physicians

The ALJ failed to consider with explanation the opinions of Dr. Ahlstrand, Dr. Estes, Dr. Penner, and Dr. Dodson. This was error, as conceded by Defendant. *See* SSR 96-8p (requiring the ALJ's RFC to consider and address all medical source opinions).

Dr. Onate

The ALJ gave great weight to the October and November 2010 treatment notes of Dr. Onate, finding his findings well-reasoned and supported by prior evaluations. (AR 25.) One of the prior exams was conducted by Dr. Ahlstrand. Her December 2009 diagnoses for Thompson, cognitive disorder NOS, major depressive disorder (recurrent, severe) and opioid dependence (early full remission) (AR 606), are not in accord with Dr. Onate's singular diagnosis of opioid dependence (active) (AR 1486). Similarly, NP Hess diagnosed Thompson, in November 2009, with major depressive disorder (recurrent) and opiate abuse (currently clean) and, in November 2010, with a mood disorder. (AR 1138, 1154.) Other than in the period immediately following Thompson's October 2009 second suicide attempt, no other physician diagnosed Thompson with an active opioid dependence. (AR 1355 (Dr. Rau diagnosed cognitive disorder NOS, major depressive

disorder mild without psychosis), AR 122-23, 183 (Drs. Estes and Penner diagnosed organic brain syndrome, affective disorders, anxiety-related disorders), AR 1637 (Dr. Sora diagnosed major depression recurrent severe without psychotic features, cognitive disorder NOS, opiate dependence in early remission). Therefore, Dr. Onate's singular diagnosis was not well supported by other providers.

The ALJ relied upon the fact that Dr. Onate found Thompson exhibited no signs of depression or anxiety and his mental status was essentially normal (no cognitive difficulty, memory intact, and normal attention span). (AR 25, 1486, 1490.) Dr. Onate's findings were not supported by the findings of other providers, nor did he opine on Thompson's working abilities as did other physicians. Dr. Ahlstrand's testing revealed compromised memory and visuospatial perception, and she found elevated levels of depression and anxiety (AR 606); from November 2009 to May 2012, NP Hess repeatedly found Thompson had symptoms of anxiety and depression (AR 1137, 1140, 1142, 1146, 1150, 1153, 1154, 1450, 1454, 1456, 1469, 1492, 1494); Dr. Rau found "some inefficiency with his working memory and processing speed and with nonverbal reasoning," and concluded Thompson would have days when it would be difficult to stay focused and he would get off task (AR 1355, 1357); Dr. Sora found Thompson had a marked cognitive decline, presented as more than mildly depressed, and experienced significant impairments in immediate and short term memory as well as in executive functioning (AR 1637-1638). Also, Dr. Onate prescribed Thompson medication for depression, which is inconsistent with his finding that Thompson was not experiencing symptoms of depression. (AR 1486, 1490.)

Additionally, the ALJ assigned Dr. Onate the greatest weight but without explanation he made findings that contradicted Dr. Onate's records. The ALJ concluded that, while using substances (as Dr. Onate's diagnosis indicates Thompson was doing), Thompson met the listing criteria for an affective disorder because he had a medically documented depressive syndrome with "anhedonia, sleep disturbance, decreased energy,

difficulty concentrating, and thoughts of suicide," and an anxiety related disorder evidenced by recurrent and severe panic attacks (AR 23). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, 12.06. Dr. Onate did not make findings that support this conclusion.

The ALJ must reconsider Dr. Onate's opinion on remand in light of this Order, with particular focus on the medical sources the ALJ failed to address.

Step Two

At Step Two, the ALJ did not find major depressive disorder or a cognitive disorder to be a serious impairment. It appears the ALJ never reached the question of severity; rather, he concluded Thompson did not have a medically determinable impairment of major depressive disorder or cognitive disorder. As discussed above, Dr. Onate stood as the lone medical opinion that Thompson did not have a depressive disorder and/or a cognitive disorder. Additionally, at the first of two appointments, Dr. Onate diagnosed Thompson with major depressive disorder, unipolar, severe, chronic, recurrent, without psychosis. (AR 516.) The ALJ must reconsider Step Two taking account of all the medical opinions of record.

Dr. Rau

The ALJ stated that he gave limited weight to the opinion of Dr. Rau because he had not had the opportunity to review the treatment notes of Dr. Onate. (AR 25.) In fact, Dr. Rau stated that he had reviewed "psychologic and medical notes," covering the period December 2009 to January 2011. (AR 1350, 1353.) Thompson saw Dr. Onate in October and November 2010, and Dr. Rau did not specify which records he reviewed. Thus, there is not substantial evidence in the record to support the ALJ's finding that Dr. Rau did not see the records from Dr. Onate; rather, it is unknown whether he reviewed those records.

The ALJ focused primarily on the fact that Dr. Rau's March 24, 2011 exam occurred shortly after Thompson experienced an extremely debilitating hospitalization (January 26 to February 15, 2011). (AR 25.) The ALJ relied upon the fact that Dr. Onate

did not find concentration limitations in November 2010, and NP Hess found only mild difficulties in social and occupational functioning (as evidenced by a GAF of 65) in May 2011. Therefore, the ALJ concluded that Dr. Rau's findings were limited to Thompson's abilities on the date of the exam. (AR 25, 26-27.) The Court has instructed the ALJ to reconsider his reliance upon the opinion of Dr. Onate. Further, by August 2011, six months after the hospitalization, NP Hess found Thompson had a GAF of 40-50. (AR 1459.) The GAF score of 65 in May 2011, does not reflect the variability in this score in the months before and after that date. (AR 1450 (July 2010, GAF 50), AR 1453 (October 2010, GAF 65), AR 1454 (November 2010, GAF 55), AR 1456 (March 2011, GAF 50).)

In light of the numerous errors identified in this Order, particularly the ALJ's failure to address several medical opinions, Dr. Rau's opinion should be reconsidered upon remand. Further, Thompson requested a subpoena for Dr. Rau, which the ALJ denied. (Doc. 20 n.1.) After his exam, Dr. Rau opined that Thompson would experience "days when he will have difficulty staying focused due to variability downward with his processing speed and due to getting off of task at times due to dysphoria or depression or frustration." (AR 1357.) Thompson's counsel sought to ask the vocational expert whether this limitation would prevent a person from working, but the ALJ disallowed the inquiry as too imprecise. (AR 97-99.) This ambiguity in Dr. Rau's opinion is precisely the reason counsel sought additional testimony from him. In reconsidering Dr. Rau's opinions, the ALJ should consider obtaining the additional testimony Thompson seeks from Dr. Rau.

Dr. Sora

The ALJ discounted the opinion of Dr. Sora for two reasons. He found it was a one-time examination for purposes of litigation. (AR 26.) Defendant concedes this is not a proper basis for discounting a physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). Defendant tries to recast the ALJ's reasoning as an in artful way of noting Dr. Sora's lack of treating relationship with Thompson. If the ALJ intended to rely

upon the relationship between Dr. Sora and Thompson, he could easily have done so. Instead, he relied on the purpose of the exam, which was improper.

The ALJ also found that Dr. Sora's opinion did not undermine the findings of Dr. Onate (a substance addiction specialist). (AR 26.) Contrary to Dr. Sora's opinion, Dr. Onate did not make any findings about Thompson's ability to work. The ALJ should reconsider Dr. Sora's opinion in light of this Order and the entirety of the record upon remand.

Nurse Practitioner Hess

Nurse Practitioner Hess opined that Thompson had impairments in memory, concentration/persistence, social interaction and adaptation to change. (AR 1466.) For support, she referred to the evaluation by Dr. Ahlstrand. (*Id.*) She later opined that Thompson was disabled and unlikely to return to work. (AR 1495.) Because the opinion of a nurse practitioner is not entitled to the deference given the opinion of an acceptable medical source, 20 C.F.R. §§ 404.1513(a) & (d), to discount her testimony as an "other" medical source an ALJ need provide only germane reasons. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (contrasting the requirement that a treating physician's opinion can be rejected only with specific, legitimate reasons). An ALJ is allowed to give additional weight to a medical doctor that is an acceptable medical source. *Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008).

The ALJ stated that he gave limited weight to NP Hess's opinion because she attempted to transfer care to an opiate detox specialist, noted Thompson's cravings were increasing as of November 2010, and her treatment did not change his opioid dependence diagnosis nor treat it. (AR 25-26.) The ALJ's justifications regarding the weight he assigned to NP Hess's opinions are merely observations but provide no basis for discounting her opinion. The ALJ must reconsider the opinion of NP Hess in light of this Order, particularly the discussion regarding substance abuse, and the entire record on remand.

<u>Lay Witnesses</u>

The ALJ gave limited weight to the statements from Thompson's mother, father, wife, and aunt because they assumed Thompson's limitations arose from brain damage and mental health disorders, but they were unaware of his current polysubstance abuse. (AR 25.) In support of his finding, the ALJ cites a record from August 2009, in which Thompson reported that his wife was not aware of his current drug use. (AR 506.) The ALJ extrapolated with no record support that, therefore, his other family members were "presumably" also not aware of his drug use. (AR 25.) More importantly, there is no evidence in the record that, after October 2009, Thompson was abusing any substances. In his July 2012 testimony, Thompson stated that he had verbal contracts with his wife and parents about not abusing the narcotics he was prescribed for neuropathic pain; thus, they had knowledge of his problem with drug addiction. There is no record support for the ALJ's rejection of the lay witness testimony on the basis that the witnesses mis-attributed Thompson's limitations to something other than substance use. Because the ALJ rejected this testimony without providing a germane reason, he erred. *Stout v. Comm'r Soc. Sec. Admin.* 454 F.3d 1050, 1056 (9th Cir. 2006).

Accordingly,

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 29th day of September, 2015.

D. Thomas Ferraro
United States Magistrate Judge